IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

CAROL L. SANDS                                                                                    PLAINTIFF

v.                                            CIVIL NO. 12-3019

MICHAEL J. ASTRUE[1], Commissioner
Social Security Administration                                                            DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Carol L. Sands, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on November 21, 2008, alleging an inability to work since July 1, 2002, due to chronic asthma, emphysema, lower back pain, depression, endometriosis, anxiety, panic attacks, chronic obstructive pulmonary disease, hand numbness and bilateral shoulder problems. (Tr. 150, 153, 209). For DIB purposes,

---

[1] Carolyn Colvin became the Acting Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn Colvin has been substituted for Commissioner Michael J. Astrue as the Defendant in this suit.

Plaintiff maintained insured status through December 31, 2009. (Tr. 18, 161). An administrative hearing was scheduled for January 26, 2010; however, Plaintiff decided she wanted to look for an attorney. (Tr. 18, 33-43). A supplemental administrative hearing was held on June 23, 2010, at which Plaintiff appeared with counsel and testified. (Tr. 44-67).

By written decision dated August 27, 2010, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 20). Specifically, the ALJ found Plaintiff had the following severe impairments: asthma, chronic obstructive pulmonary disease (COPD), mood disorders, fibromyalgia, degenerative disc disease, and osteoarthritis. (Tr. 20). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 21). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> occasionally lift/carry ten pounds and frequently lift/carry less than ten pounds, sit for six hours during an eight-hour workday, and stand/walk for two hours during an eight-hour workday. She can occasionally climb, balance, crawl, stoop, kneel, and crouch, and she must avoid temperature extremes and concentrated exposure to pulmonary irritants like dusts, fumes, gases, and odors. She can do work where interpersonal contact is incidental to the work performed, complexity of tasks is learned and performed by rote, with few variables, and requiring little judgment. Supervision required is simple, direct, and concrete.

(Tr. 22). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a small products assembler, a small production machine operator, and a small product inspector. (Tr. 27).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on December 23, 2011. (Tr. 1-5). Subsequently, Plaintiff filed this action.

(Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for a report and recommendation. (Docs. 7,8).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.    Evidence Presented:**

At the time of the administrative hearing before the ALJ on June 23, 2010, Plaintiff was forty-five years of age. Plaintiff testified that she had obtained her general equivalency diploma and a vocational degree in accounting. (Tr. 47, 50).

The medical evidence during the relevant time period reflects the following. On November 20, 2005, Plaintiff entered the North Arkansas Regional Medical Center emergency room with complaints of asthma symptoms. (Tr. 408-419). Treatment notes indicated that Plaintiff had been having problems for the past two days and had tried to take care of things on her own. Plaintiff reported that she called an ambulance when she was out of her Albuterol. Plaintiff was diagnosed with asthmatic bronchitis and was discharged with prescriptions.

On February 5, 2006, Plaintiff entered the North Arkansas Regional Medial Center emergency room with complaints of cough and congestion. (Tr. 403-407). Plaintiff denied any significant myalgias or arthralgias. Plaintiff was diagnosed with asthma and an upper respiratory infection. Plaintiff was discharged in stable condition, and instructed to receive follow-up care.

On September 29, 2006, Plaintiff entered the North Arkansas Regional Medial Center emergency room with complaints of an asthma exacerbation. (Tr. 362-375). Plaintiff reported she had been using her inhaler, but that she had misplaced it a couple of days ago. Plaintiff admitted to using methamphetamine and used it the previous day, but reported she did not use

methamphetamine every day. Plaintiff was discharged on October 2, 2006, and was to follow-up with a primary care physician.

On November 7, 2006, Plaintiff underwent a mental status examination performed by Dr. W. Charles Nichols. (Tr. 431-436). Dr. Nichols noted that Plaintiff drove herself to the evaluation and arrived on time. Plaintiff's gait and posture were noted as normal. Plaintiff reported that she worked as a cashier from February of 2006 through May of 2006. When asked why she quit, Plaintiff reported that she stopped working because of her health, noting that she just could not get up to go to work. Plaintiff reported that her medication consisted of Albuterol and Advair. Plaintiff reported that she had taken Ativan, but did not follow-up with the prescribing doctor. Plaintiff reported that she had been experiencing anxiety for the past two to three years and that she was just dealing with it by staying at home and avoiding any decisions in life. Plaintiff denied the use of alcohol but reported that she smoked cannabis the previous night. Plaintiff indicated that she used marijuana at least twice a month. Plaintiff also reported that she used methamphetamine about six weeks ago. Plaintiff denied that she had ever experienced significant anxiety symptoms prior to her use of methamphetamine. Plaintiff reported that she was able to perform all household chores around her home, including cooking, cleaning, laundry, and washing dishes. Plaintiff reported that her mother often urged her to take care of her chores. Dr. Nichols noted that Plaintiff's concentration and mental pace appeared adequate. Dr. Nichols opined that Plaintiff's reliability was highly suspect. Dr. Nichols opined that her prognosis for significant change during the next twelve months was positive if Plaintiff achieved abstinence from illegal drugs. Dr. Nichols noted that Plaintiff's mental status, attention, and short-term memory were difficult to assess given suspicion about under

performance, as well as admitted ongoing drug abuse.

On November 14, 2006, Plaintiff underwent spirometry testing. (Tr. 427-430). Plaintiff was noted to have moderately severe obstruction, with low vital capacity. The test revealed post bronchodilator improvement.

On December 18, 2006, Plaintiff entered the North Arkansas Regional Medical Center emergency room with upper respiratory infection symptoms. (Tr. 387-402). Plaintiff was diagnosed with acute bronchitis. Plaintiff was treated and instructed to follow-up with her primary care physician in two to three days.

On May 15, 2007, Plaintiff was brought to the North Arkansas Regional Medical Center emergency room due to an acute asthma attack. (Tr. 341-361). Plaintiff was admitted with the following diagnoses: acute bronchitis, acute exacerbation of chronic obstructive pulmonary disease, and acute asthma. Dr. Sam Scroggins noted that Plaintiff was wearing her oxygen on her forehead when he evaluated her and noted that Plaintiff was "obviously not in compliance with use of her oxygen." Plaintiff was given intravenous and oral steroid therapy, as well as updrafts with steroid and bronchodilators. Plaintiff's asthma improved during her hospital admission. Plaintiff was discharged on May 18, 2007, and was to follow-up with a physician of her choosing.

On August 24, 2007, Plaintiff entered the North Arkansas Regional Medical Center emergency room with complaints of an earache. (Tr. 384-386, 556). Plaintiff left without being seen.

On October 30, 2007, Plaintiff entered the North Arkansas Regional Medical Center emergency room with complaints of shortness of breath for the past three days. (Tr. 376-383,

423-425, 558). Plaintiff was diagnosed with acute bronchitis, given prescription medication, and told to follow-up with her primary care physician. On the same day, Plaintiff was seen at the Medical Clinic Mission. (Tr. 422).

On November 27, 2007, Plaintiff was seen at the Medical Clinic Mission complaining of COPD, Asthma; a hysterectomy; and anxiety. (Tr. 421). Plaintiff was noted to have mild to moderate wheezing. Plaintiff was diagnosed with persistent asthma and prescribed medication.

On December 17, 2008, Plaintiff underwent a mental diagnostic evaluation performed by Dr. Nichols. (Tr. 335-340). Plaintiff reported that she was unable to work due to multiple conditions, including pinched nerves in her back, COPD, and panic attacks. Plaintiff reported that her panic attacks, which usually lasted fifteen to twenty minutes, were triggered by confusion, worry about everyday stressors, or loud commotion in crowded stores. Plaintiff reported that she had a panic attack about once a week. Plaintiff reported that she slept poorly due to nightmares about physical abuse from her first husband, and physical pain in her joints and legs. Plaintiff reported that despite the stress that she experiences, she went to church with her father about twice a week. Plaintiff reported that she sang in the church choir, but noted her lung capacity was not what it used to be. Plaintiff reported a sad mood and lack of motivation, but did not report suicidal ideation, worthlessness, feelings of helplessness, or concentration problems. At the time of the evaluation, Plaintiff reported that she was not prescribed any psychotropic medications. However, Plaintiff reported that she had started taking Prozac from a previous prescription three weeks ago. Plaintiff reported that she lived with her mother and stepfather, and that her chores around the house consisted of picking up her own things, washing her dishes, and preparing her own meals. Plaintiff reported that she had to stay away from dust

due to respiratory problems. Dr. Nichols noted that Plaintiff reported having poor reading comprehension and an inability to multiply and divide numbers despite owning and operating a tax accounting business in the past. Plaintiff admitted to a 2002 conviction for possession of methamphetamine. Plaintiff admitted to using methamphetamine off and on until about sixteen months ago. Plaintiff also reported a past history of marijuana use, with the last usage being sometime in 2007. Dr. Nichols noted that Plaintiff presented in a dramatic style with exaggerated mannerisms. Plaintiff reported her mood as "solemn" and noted that she just went through the motions and slept as much as her mother would allow. Dr. Nichols diagnosed Plaintiff with methamphetamine dependence, sustained full remission; anxiety disorder, NOS; cannabis abuse, in remission; personality disorder, cluster B traits; and gave Plaintiff a global assessment of functioning score of 60-65. Dr. Nichols opined that minimal impairment of Plaintiff's activities of daily living would be expected. Dr. Nichols noted the following:

> During the interview, Ms. Sands was typically cooperative. Signs of symptom exaggeration were observed consistently during the interview. The claimant's symptom allegations are not adequately consistent with her presentation during this interview. When answering cognitive screening items, evidence of approximate answers and underperformance were strongly suspected. When asked about symptoms, the claimant tended to display the symptoms in question. Malingering is strongly suspected. The veracity and the validity of the clinical information that she provided is highly in doubt.

(Tr. 340).

On December 18, 2007, treatment notes from the Medical Clinic Mission indicated that Plaintiff did not show up for her appointment. (Tr. 420).

On December 19, 2008, Plaintiff was seen at the Harrison Mediquick with complaints of head and chest congestion, a scratchy throat, and a cough. (Tr. 555).

On December 30, 2008, Plaintiff was seen at the Harrison Mediquick complaining of leg pain that was causing sleeping problems. (Tr. 554).

On February 2, 2009, Plaintiff was seen in a follow-up appointment after her first mammography. (Tr. 489, 548). Plaintiff reported that she experienced fatigue and night sweats. Plaintiff denied dizziness or memory changes. Plaintiff denied depression, anxiety attacks, crying spells, alcohol or drug problems, problems falling asleep or nervousness. Upon examination, Plaintiff's lungs were noted as clear to ausculation bilaterally with no wheezes, rhonchi or crackles. Plaintiff was diagnosed with a right breast mass, asthma, emphysema, and endometriosis.

On February 10, 2009, Plaintiff underwent a general physical examination performed by Dr. Shannon Brownfield. (Tr. 322-331). At the time of the evaluation, Plaintiff reported she was taking Advair and Albuterol. Plaintiff was noted to have some limits in the range of motion of her shoulders, hips, knees, and spine. Plaintiff also exhibited multiple trigger points. There was no evidence of muscle weakness or atrophy. Upon a limb function evaluation, Dr. Brownfield reported Plaintiff was able to hold a pen and write; to touch fingertips to palm; to grip; to oppose thumb to fingers; to pick up a coin; to stand and walk without assistive devices; to walk on heel and toes; and to have a diminished ability to squat and arise from a squatting position. Dr. Brownfield diagnosed Plaintiff with COPD in a nonsmoker; lower back pain; multiple joint/muscle pain, possible fibromyalgia; and untreated depression/anxiety. Dr. Brownfield opined Plaintiff had moderate limitations with prolonged positions; moderate to severe limitations in stooping and lifting; and globally moderate limitations secondary to her psychological symptoms.

On February 24, 2009, Plaintiff was seen at the Medical Mission Clinic due to right upper quadrant pain and low back pain. (Tr. 610). Plaintiff was seen again for physical therapy on March 24, 2009. (Tr. 609).

On February 28, 2009, Plaintiff was seen at Harrison Mediquick due to a cough, congestion, and a sore throat. (Tr. 460).

On April 14, 2009, Plaintiff was seen at the Medical Clinic Mission with complaints of lower back pain. (Tr. 608).

On May 12, 2009, medical records from Medical Clinic Mission indicated that Plaintiff was a no show for her physical therapy. (Tr. 607).

On June 15, 2009, Plaintiff was seen at the Cornerstone Medical Clinic, upon referral by Medical Clinic Mission, with complaints of pelvic pain. (Tr. 437-440, 487, 504). Plaintiff reported she had a period every two weeks with heavy flow and clots. Plaintiff was noted to have a full range of motion in all joints. Plaintiff was diagnosed with dysmenorrhea and irregular menstruation. Plaintiff was scheduled for further testing.

On June 26, 2009, Plaintiff was seen at the Cornerstone Medical Clinic for an endometrial biopsy. (Tr. 441-442, 479).

On July 16, 2009, Plaintiff was seen at the Cornerstone Medical Clinic with complaints of pelvic pain. (Tr. 443, 500, 502). Treatment notes indicated that Plaintiff was in the clinic to discuss a hysterectomy. Dr. Dawn M. Phelps noted that Plaintiff did not undergo the ultrasound that had been scheduled for her at the hospital. Plaintiff was examined, and it was noted that she continued to want a hysterectomy for her chronic pelvic pain and excessive menstruation. Dr. Phelps noted that the procedure would be scheduled.

On July 31, 2009, Plaintiff presented to the Cornerstone Medical Clinic for a preoperative evaluation. (Tr. 446, 464, 497). Plaintiff reported that she felt well, had good energy, and was sleeping well. Plaintiff underwent a hysterectomy on August 7, 2009. (Tr. 451-459, 461-463, 468-475).

On February 5, 2010, Plaintiff was seen in the North Arkansas Regional Medical Center emergency room after being involved in a motor vehicle accident. (Tr. 508-515). Plaintiff complained of left shoulder pain, left chest wall pain, and left clavicle pain. X-rays of the shoulder and cervical spine revealed no evidence of a fracture. (Tr. 602-603).

On February 23, 2010, Plaintiff was seen at the Medical Clinic Mission with complaints of bronchitis symptoms. (Tr. 606). Plaintiff also needed a prescription refill. Plaintiff was diagnosed with COPD, insomnia, depression, and fibromyalgia.

### IV. Discussion:

Plaintiff argues the following issues in this appeal: 1) the ALJ erred in finding Plaintiff not credible; 2) the ALJ erred in failing to propound an accurate hypothetical question to the vocational expert; and 3) the ALJ's decision was not supported by substantial evidence.

#### A. Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to

support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, and the Defendant's well-stated reasons set forth in her brief, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. As noted by the ALJ, the medical evidence revealed that Plaintiff's asthma and upper respiratory impairments responded well to treatment. Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.")(citations omitted). The medical evidence further revealed rather sporadic but conservative treatment for Plaintiff's alleged low back, shoulder and joint pain. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding fact that physician prescribed conservative treatment weighed against plaintiff's subjective complaints).

With regard to an alleged mental impairment, the record failed to show Plaintiff sought ongoing treatment from a mental health professional. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability). It is noteworthy that Plaintiff reported feeling well, and that she had good energy in July of 2009.

Therefore, although it is clear that Plaintiff suffers with some degree of pain, she has not established that she is unable to engage in any gainful activity. See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not

mandate a finding of disability). Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### B.     Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as a small products assembler, a small production machine operator, and a small product inspector, during the relevant time period. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### C.     Fully and Fairly Develop the Record:

While an ALJ is required to develop the record fully and fairly, see Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir.2000) (ALJ must order consultative examination only when it is necessary for an informed decision), the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period. See Strongson v. Barnhart, 361 F.3d 1066, 1071-72 (8th Cir.2004) (ALJ must develop record fully and fairly to ensure it includes evidence from treating physician, or at least examining physician, addressing impairments at issue).

### D.     The ALJ's RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §

404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

The Court notes that in determining Plaintiff maintained the RFC to perform sedentary work with limitations, the ALJ specifically discussed the relevant medical records, as well as the opinions of Drs. Brownfield and Nichols. The ALJ also addressed the findings of the non-examining medical consultants. (Tr. 288-289, 297-321). The Court finds, based upon the well-stated reasons outlined in the Defendant's brief, that Plaintiff's argument is without merit, and there was sufficient evidence for the ALJ to make an informed decision. Therefore, the Court finds there is substantial evidence of record to support the ALJ's RFC findings for the relevant time period.

## IV.     Conclusion:

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our**

**report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 6th day of June, 2013.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)